## THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DERRICK ECHOLS, JR., #R15847, | ) |
| | ) |
| **Plaintiff,** | ) |
| **vs.** | )     **Case No. 3:20-cv-00583-GCS** |
| | ) |
| ILLINOIS DEPT. of CORRECTIONS, | ) |
| MEDICAL STAFF (Nurse/Medical | ) |
|    Technicians, Menard CC), | ) |
| MAJOR BRADLEY, | ) |
| MAJOR RATHKE, | ) |
| MAJOR LASHBROOK, | ) |
| and WEXFORD HEALTH SOURCES, | ) |
| | ) |
| **Defendants.** | ) |

# MEMORANDUM AND ORDER

**SISON, Magistrate Judge:**

Plaintiff Derrick Echols, Jr., is a state prisoner currently incarcerated at Pontiac Correctional Center ("Pontiac") in the Illinois Department of Corrections ("IDOC"). He filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while he was confined at Menard Correctional Center ("Menard"). He asserts violations of the First, Fourth, Eighth, and Fourteenth Amendments, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. and the Rehabilitation Act ("RA"), 29 U.S.C. § 701, *et seq*.[1] (Doc. 1, p. 23, 34). He seeks monetary damages.

This case is now before the Court for preliminary merits review of the Complaint

---

[1] Although Plaintiff mentions only the ADA, "the [RA] is available to him, and courts are supposed to analyze a litigant's claims and not just the legal theories that he propounds, especially when he is litigating *pro se*." *Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir. 2012) (internal citations omitted).

under 28 U.S.C. § 1915A,[2] which requires the Court to screen prisoner Complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* Complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### THE COMPLAINT

Plaintiff makes the following allegations in his Complaint (Doc. 1): When he arrived at Menard on June 12, 2018, unnamed correctional staff forcefully held Plaintiff down while he was handcuffed and cut off his dreadlocks against his will, pursuant to Menard's grooming policy. (Doc. 1, p. 6, 23-26). This violated Plaintiff's religious beliefs and constituted excessive force. The removal of Plaintiff's hair caused him to develop psoriasis, seborrhea of the scalp, itching, rashes, and hair loss. (Doc. 1, p. 23).

Officers Bradley, Rathke, and Lashbrook, as well as unknown medical and/or mental health staff, authorized a "security hold" against Plaintiff and placed him on suicide watch. (Doc. 1, p. 2, 23, 26-28). During the suicide watch, Plaintiff was housed in a cell where he was stripped of his clothes and his prosthetic leg was confiscated against his will. (Doc. 1, p. 23, 28). During his time on suicide watch, he was forced to crawl or hop along the cold, dirty cell floor while naked in order to retrieve his food and

---

[2] The Court has jurisdiction to screen the Complaint in light of Plaintiff's consent to the full jurisdiction of a magistrate judge and the Illinois Department of Corrections' limited consent to the exercise of magistrate judge jurisdiction, as set forth in the Memorandum of Understanding between the Illinois Department of Corrections and this Court.

medication.  (Doc. 1, p. 23).  His prosthesis was not returned until June 20, 2018.  (Doc. 1, p. 28).  These actions amounted to excessive force and violated the ADA.

On November 9, 2018, Plaintiff was moved from an ADA cell into a cell that was not ADA accessible.  (Doc. 1, p. 16, 19, 23).  His contract to have a wheelchair was ignored, and the grievance officer did not address his complaint over the confiscation of his prosthetic leg.  (Doc. 1, p. 10-11, 13, 16-17, 19, 23).  His grievances over the lack of ADA accommodations were denied or deemed moot.  (Doc. 1, p. 23).

Plaintiff seeks financial compensation and court review of the IDOC grooming policy to remove dreadlocks, which he contends violates the First and Eighth Amendments.  (Doc. 1, p. 23, 34).

## DISCUSSION

Based on the allegations in the Complaint, the Court designates the following claims in this *pro se* action:

Count 1:     On June 12, 2018, unidentified Menard/IDOC staff cut Plaintiff's dreadlocks pursuant to a Menard/IDOC policy and used excessive force against him, in violation of Plaintiff's First, Fourth, Eighth, and Fourteenth Amendment rights.

Count 2:     On June 12, 2018, Bradley, Rathke, Lashbrook, and unknown medical/mental health staff placed Plaintiff under a "security hold," put him on suicide watch, and used excessive force to take his prosthetic leg, forcing him to crawl or hop on the dirty cell floor in order to move about, in violation of the Eighth Amendment.

Count 3:     On June 12, 2018, Bradley, Rathke, Lashbrook, and unknown medical/mental health staff placed Plaintiff under a "security hold," put him on suicide watch, and confiscated his prosthetic leg, forcing him to crawl or hop on the dirty cell floor in order to move about, in violation of the ADA and/or

the RA.

Count 4:    Starting November 9, 2018, unidentified Menard/IDOC
officials housed Plaintiff in a non-ADA-accessible cell where
he was without his prosthetic leg at times and his wheelchair
access to facilities was impaired.

Count 5:    Unidentified grievance officials wrongly denied Plaintiff's
grievances over the denial of ADA accommodations.

Any other claim that is mentioned in the Complaint but not addressed in this Order
should be considered dismissed without prejudice as inadequately pled under the
*Twombly* pleading standard.[3]

## Count 1

Plaintiff indicates that he wore his hair in dreadlocks for religious reasons.
Prisoners are entitled to practice their religion so long as such practice "does not unduly
burden the administration of the prison." *Hunafa v. Murphy,* 907 F.2d 46, 47 (7th Cir.
1990). However, a prison regulation that impinges on an inmate's First Amendment
rights may still be valid "if it is reasonably related to legitimate penological interests[,]"
such as prison security. *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 349 (1987)(quoting *Turner
v. Safley,* 482 U.S. 78, 89 (1987)).

Plaintiff may be able to pursue a First Amendment and/or an Eighth Amendment
claim for excessive force based on the forcible removal of his dreadlocks. However, he
has failed to associate any individual Defendant with these claims. He merely states that

---

[3]     *See, e.g., Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)(noting that an action fails to state a
claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible
on its face.").

"staff" forcefully held him down while an inmate recruited by "staff" cut his hair.  (Doc. 1, p. 23-26).  This is not sufficient.  While Plaintiff does include unnamed "medical staff" (nurse and/or med techs) among the Defendants (Doc. 1, p. 1), he does not allege that the medical staff were involved in the removal of his dreadlocks.  Instead, Plaintiff indicates that correctional staff ordered the haircut while he was in the holding cell/bullpen.  (Doc. 1, p. 23-26).

While Plaintiff seeks to pursue this claim against the IDOC, he cannot sue a state governmental agency for money damages.  *See, e.g.*, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)(stating that "[n]either a State nor its officials acting in their official capacities are 'persons' under § 1983.").  *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001)(noting that Eleventh Amendment bars suits against states in federal court for money damages); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995)(noting that state Department of Corrections is immune from suit by virtue of Eleventh Amendment).

For these reasons, Count 1 shall be dismissed for failure to state a claim upon which relief may be granted.  The dismissal is without prejudice as to any individual Defendants that Plaintiff may identify in an amended Complaint.[4]  However, the claims in Count 1 against the IDOC will be dismissed with prejudice.

## Count 2

Plaintiff seeks to pursue a claim of "excessive force" for "withholding/taking [his]

---

[4]     A Plaintiff must associate particular defendants with specific claims so these defendants are put on notice of the claims brought against them and so they can properly answer the complaint.  *See Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003).  A Defendant whose name is unknown may be identified as a "John/Jane Doe," but the Plaintiff must supply as much descriptive information as possible (such as job title, shift worked, or location) to assist in the person's eventual identification.

prosthetic leg" while placing him on suicide watch on June 12, 2018, after which he had to crawl on the floor or hop to move about his cell. (Doc. 1, p. 23). His attached grievance supplies some additional facts, stating that after his placement in the suicide watch cell, Plaintiff "reluctantly" complied with a staff request to check his prosthesis for contraband by removing the prosthesis himself and handing it to a staff member for inspection. (Doc. 1, p. 28). The staff member did not return the prosthesis and left it outside Plaintiff's cell. Despite Plaintiff's entreaties and distress, his leg was not returned to him until 8 days later. *Id.*

These facts do not support a claim for excessive force, because by Plaintiff's own description, no physical force or touching at all was used against him to remove his prosthetic leg. *See, e.g.*, *Wilkins v. Gaddy*, 559 U.S. 34, 40 (2010)(noting that excessive force claim must involve force that was used "'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline'").

However, keeping Plaintiff in the suicide watch cell for several days without his prosthetic leg or any other mobility aid may have violated the Eighth Amendment's prohibition on cruel and unusual punishment if it denied him "the minimal civilized measure of life's necessities," creating an excessive risk to his health or safety, and if Defendants were deliberately indifferent to that risk. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Prison conditions that deprive inmates of basic human needs – food, medical care, sanitation, or physical safety – may violate the Eighth Amendment. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). On that basis, the Eighth Amendment claim in Count 2 for unconstitutional conditions of confinement may proceed against Bradley, Rathke,

Lashbrook, and the unknown medical staff (nurses/medical technicians) who were responsible for placing/keeping Plaintiff in the cell without his prosthetic leg.  However, the unknown medical staff cannot be given notice of the claim until Plaintiff identifies the person(s) by name.

The portion of Count 2 alleging excessive force is dismissed without prejudice for failure to state a claim upon which relief may be granted.

Plaintiff also seeks to bring this claim against the IDOC, Wexford Health Sources ("Wexford"), and unnamed "mental health personnel."[5]  (Doc. 1, p. 23).  As explained with Count 1, Plaintiff cannot maintain a claim for damages against the IDOC. Furthermore, he can only sustain a claim against Wexford if he can show that an individual employed by Wexford acted or failed to act as a result of an official policy espoused by Wexford.  *See, e.g.*, *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004)(noting that corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the violation).  Plaintiff has made no such allegation.  For these reasons, Count 2 fails to state a claim upon which relief may be granted against the IDOC or Wexford.

## Count 3

Plaintiff's allegations that he was confined in the suicide watch cell without his prosthetic leg are sufficient to state an ADA and/or RA claim.  However, this claim

---

[5]      It is not clear whether the "mental health personnel" included in Plaintiff's statement of this claim fall within his description of the unknown "medical staff" (nurses and med techs) that he lists as a Defendant.  (Doc. 1, p. 1-2, 23).  In any case, Count 2 cannot proceed against any unknown party until Plaintiff identifies him/her by name.

cannot proceed against any individual Defendants because individual employees of the IDOC cannot be sued under the ADA or the RA. *See Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 670 (7th Cir. 2012). Instead, the proper defendant is the relevant state department or agency. *See* 42 U.S.C. § 12131(1)(b). *See also Jaros*, 684 F.3d at 670, n.2 (indicating that individual capacity claims are not available; the proper defendant is the agency or its director (in his official capacity)). Therefore, the claim in Count 3 will proceed only against the IDOC and is dismissed as to Defendants Bradley, Rathke, Lashbrook, the unknown medical/mental health staff, and Wexford.

## Count 4

As with Count 3, the claim that prison officials kept Plaintiff in a non-ADA-accessible cell in November 2018, where he was unable to safely move about or access the sink and toilet, states a claim under the ADA and/or RA that merits further review. Plaintiff indicates that during the time he was in the non-accessible cell, he was without his prosthetic leg for some period, and that his wheelchair could not maneuver properly in the area. (Doc. 1, p. 16-17, 19). Count 4 shall therefore proceed, but only against the IDOC.

## Count 5

The assertion that the Menard "Administration/Grievance Office" wrongly denied Plaintiff's grievances over the denial of ADA accommodations fails to state a claim upon which relief may be granted. (Doc. 1, p. 23). Even if Plaintiff had associated one of the named Defendants with this claim, it is subject to dismissal. The alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying

conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011).  Count 5 shall therefore be dismissed with prejudice.

### JOHN/JANE DOE DEFENDANTS

Plaintiff is responsible for conducting discovery (informal or formal) aimed at identifying the "John/Jane Doe" Unknown Medical Staff Defendants (Nurse/Medical Technicians), in accordance with the discovery order that will be entered by the Court. Once the names of the unknown Defendants are discovered, Plaintiff must file a motion to substitute the newly identified Defendant(s) in place of the generic designations in the case caption and throughout the Complaint.

### OFFICIAL CAPACITY CLAIMS

Plaintiff raises claims against each Defendant in his or her official capacity.  (Doc. 1, p. 1).  The ADA and RA claims are properly brought against the IDOC as an official capacity claim.  However, Plaintiff's claims for monetary damages may only be pursued against state officials in their *individual* capacities.  *See Brown v. Budz*, 398 F.3d 904, 918 (7th Cir. 2005); *Shockley v. Jones*, 823 F.2d 1068, 1070 (7th Cir. 1987).   Accordingly, the official capacity claims against the individual defendants are dismissed without prejudice.  Count 2 will proceed against Bradley, Rathke, Lashbrook, and the Unknown Medical Staff (Nurse/Medical Technicians) in their individual capacities only.

### DISPOSITION

**IT IS HEREBY ORDERED** that portions of the Complaint (Doc. 1) survive preliminary review pursuant to 28 U.S.C. § 1915A and shall proceed as follows:  **COUNT 2** for unconstitutional conditions of confinement will receive further review against

Defendants Bradley, Rathke, Lashbrook, and the Unknown Medical Staff (Nurse/Medical Technicians); **COUNTS 3** and **4** will proceed only against the IDOC.

**IT IS FURTHER ORDERED** that **COUNT 1** is **DISMISSED** from the action without prejudice as to any individual Defendant(s). **COUNTS 1** and **2** are **DISMISSED with prejudice** as against the IDOC. **COUNT 5** is **DISMISSED** with prejudice. Defendant Wexford Health Sources is **DISMISSED** from the action without prejudice and the Clerk of Court is **DIRECTED** to **TERMINATE** Wexford as a Defendant.

The Clerk shall prepare for the IDOC, Major Bradley, Major Rathke, and Major Lashbrook: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to file an appropriate responsive pleading to the Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. PROC. 41(b).

Finally, based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

**DATED:  January 4, 2021.**

Digitally signed by Judge Sison 2
Date: 2021.01.04 10:05:46 -06'00'

**GILBERT C. SISON**
**United States Magistrate Judge**

## NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answer, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.